## ST. LOUIS, B. & M. RY. CO. v. WATKINS.*
### (No. 6817.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 15, 1922. Rehearing Denied Dec. 13, 1922.)

1. **Death ⬯⟿31(7)—Mother entitled to recover for death of children dying before injured father.**

Where children and father were fatally injured, the father outliving the children by a few hours, *held*, that it was proper for the mother to sue for and recover her own damages for loss of the children.

2. **Death ⬯⟿31(7) — Parent can recover for death of child under 14 years of age.**

Parent can recover damages for death of child under 14 years of age.

3. **Death ⬯⟿77—Evidence held sufficient basis for damages for death of children.**

In a mother's action for death of children, evidence that they were healthy and assisted their mother when called on was a sufficient basis for damages.

4. **Death ⬯⟿99(3)—Damages for death of children held not excessive.**

In a mother's action for death of children, *held*, that $4,450 for death of 6 year old girl and $3,550 for death of 3 year old girl was not an excessive verdict.

5. **Death ⬯⟿77—Requirement as to proof of damages stated.**

When proof is made of the age and relationship of the deceased to the next of kin, the jury may estimate the pecuniary damages from the facts proven, in connection with their own knowledge and experience in relation to matters of common observation, and it is not indispensable there should be proof of actual services of pecuniary value rendered to the next of kin, nor that any witness should express an opinion as to the value of services that may have been or might be rendered.

---

⬯⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction January 31, 1923.

**6. Railroads ⬤⟹350(22)—Contributory negligence of driver of automobile held for jury.**

In a mother's action for death of children in an automobile, struck by railroad motorcar, contributory negligence of the driver of the automobile was for the jury; it appearing that the crossing was frequently used, that the motorcar was moving at a very high rate of speed without signals, that the motorman was shut up in a compartment of the car on the side opposite from that on which the automobile was approaching, that the car was almost noiseless in its movement, and high weeds on the right of way obstructed the view of those approaching the railroad.

**7. Trial ⬤⟹350(3)—Issues as to life expectancies of children killed properly refused as too speculative.**

In mother's action for death of girl children, where the court stated the correct measure of damages, it was proper to reject issues about life expectancies of the children, as to whether either of them would have married, and the day, month, and year that either of them would have married, etc; such issues being too speculative.

**8. Railroads. ⬤⟹312(10)—Motorcar must give crossing signals.**

Whether or not Rev. St. 1911, art. 6564, applies to a railroad car propelled by a motor, such a car would not be licensed to run over railroad track without being equipped with apparatus for signaling its approach to public crossings; hence in a case of crossing collision between such car and automobile the court properly admitted evidence of the inadequacy of signals given by the motorcar, and properly submitted the issue whether the motorcar was equipped with a whistle reasonably calculated to give reasonable notice to the public of its approach.

**9. Death ⬤⟹52—Petition for death of children need not allege probable expenditures and earnings.**

In an action for death of children, it was not necessary that the petition allege how much plaintiff mother would have been compelled to expend on each of the children, had the accident not happened, and the average amount that would have been earned by them.

**10. Death ⬤⟹97—Damages for death of child matter for jury.**

The cost of rearing and educating young children negligently killed is a matter properly determinable by the sound judgment of the jury.

**11. Evidence ⬤⟹506—Expert evidence as to cost of rearing children not admissible in action for their death.**

In a mother's action for death of young children, expert testimony as to the cost of rearing and educating children is inadmissible; such matters being properly determinable by the jury rather than by the varying ideas of expert parents.

**12. Evidence ⬤⟹121(12) — Exclamation as to speed of railroad motorcar held res gestæ.**

In railroad crossing accident case, exclamation of a witness, made at the time, that the railroad motorcar was going very fast, held admissible as part of the res gestæ.

**13. Evidence ⬤⟹125—Inquiry by injured person after accident held res gestæ.**

In mother's action for death of two children in automobile driven by their father, in collision at railroad crossing with railroad motorcar, inquiry by the fatally injured father, immediately after the accident, as to what hit him and which way was it going, was admissible as part of the res gestæ, and as tending to show that the father did not know of the proximity of the motorcar when it hit him, the rule being that declarations are admissible as part of the res gestæ which are made by a person on receiving an injury before he is removed from the scene, and which are made in connection with the injury, and when the facts indicate that the utterances are spontaneous, created by or springing out of the transaction, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design.

**14. Appeal and error ⬤⟹1042(5)—Failure to strike allegation from petition not prejudicial, where no evidence to sustain it introduced.**

Failure to strike an allegation from the petition was not prejudicial to defendant, where the allegation raised no issue that was presented to the jury, and no evidence was complained of or set out which was admitted under such allegation.

### On Motion for Rehearing.

**15. Railroads ⬤⟹347(11)—Automobile driver's effort to escape runaway team held material, on issue of contributory negligence.**

In an action for death of children in an automobile struck by a railroad motorcar, the fact that, just before the deceased driver drove on the crossing, he was placed in great peril by the fact that a team was running away and the automobile had to be swerved from its course to save it from a collision with the team, and the whole attention of the occupants of the automobile was centered on the runaway team, and was diverted from the approaching car, held to bear materially on the issue of the driver's contributory negligence.

Appeal from District Court, Hidalgo County; Hood Boone, Judge.

Action by Mary Eleanor Watkins against the St. Louis, Brownsville & Mexico Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Graham, Jones, Williams & Ransome, of Brownsville, for appellant.

Kibbe & Perkins, of Brownsville, and Dougherty, Dougherty & Tarlton, of Beeville, for appellee.

FLY, C. J. This is a case in which appellee sued appellant for damages accruing to her by reason of the negligent killing of her two daughters, Mary Elizabeth Watkins, aged 6, and Ruth Ann Watkins, aged 3, years. A trial by jury resulted in a verdict

---

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and judgment for appellee. The case is presented to this court with a voluminous record and a brief of 225 printed pages, containing 87 assignments of error, and 28 propositions of law. The court presented 16 special issues to the jury for itself, and 2 at the request of appellant, and 26 special issues requested by appellant were refused. Upon the answers of the jury to the questions asked them the court rendered judgment in favor of appellee for $8,000; the sum of $4,450 being allowed for the death of the elder child, and $3,550 for the younger. Among various motions, filed by appellant after the verdict had been rendered, was one for a new trial, containing 87 grounds and covering 27 typewritten pages of the transcript of the record. The trial of the cause consumed 7 days.

The evidence shows that on May 4, 1921, Isaac Newton Watkins, his wife, Mary Eleanor Watkins, their three little girls, and a man named Clark were riding in a Ford automobile belonging to and driven by said Isaac Newton Watkins, and while crossing the railway track of appellant were struck by a motorcar belonging to appellant, which was running swiftly along said track, and two of the girls, Mary Elizabeth, 6 years of age, and Ruth Ann Watkins, 3 years of age, were so injured that they died on the same day, and Isaac Newton Watkins, their father and the husband of appellee, Mary Eleanor Watkins, was so badly injured that he died on May 5, 1921. There was evidence tending to show that weeds grew along the right of way of the railroad, so as to obstruct a view of the coming motorcar by those in the automobile, and the car was being run at a high rate of speed in approaching a much-used crossing on a road or street known as Alamo boulevard, and the motorman, being on the right-hand side of the car and machinery, could not keep a careful lookout on his left hand, the side from which the automobile approached the railroad. The evidence showed that the motorcar was behind its schedule time, and was running at a rapid and dangerous rate of speed when passing through a village and approaching a much-used crossing. There was testimony indicating that the motor car was moving at the speed of 45 to 50 miles an hour as it approached the crossing. It went 550 feet past the crossing, after striking the Watkins automobile, before it stopped.

[1] The first proposition stated by appellant is overruled. This suit was brought by the mother of the children to recover the losses sustained by her from the death of her two children. Her claim cannot be entangled with or obscured by the fact that the father of the children was wounded in the collision and died the next day after the children died. That fact produced no complications such as are sought to be raised by appellant. When the father died, his claim for damages from the death of the children died with him, and the claim of appellee is no more affected by his outliving the children than it would have been, if he had died before or at the time of the death of the children. Appellee sued for and recovered only her own damages for the loss of her children.

[2] The second, fifth, sixth, and seventh propositions are to the effect that a parent cannot recover damages for the death of a child under 14 years of age in Texas. The propositions are totally unsound and in the face of numerous Texas decisions. The authorities cited by appellant in support of its propositions, not only do not sustain them, but sustain exactly the converse of them. Of course, as held in the cases cited by appellant, there must be evidence tending to show probable damages before there can be a recovery, as there must be in every case in which a judgment for damages is sought. Railway v. Cowser, 57 Tex. 304; Railway v. Kindred, 57 Tex. 491; Brunswig v. White, 70 Tex. 504, 8 S. W. 85; Railway v. Sciacca, 80 Tex. 365, 16 S. W. 31; Railway v. Measles, 81 Tex. 477, 17 S. W. 124; Railway v. Lacy, 86 Tex. 247, 24 S. W. 269; Railway v. Vaughn, 5 Tex. Civ. App. 195, 23 S. W. 746; Railway v. Cullen (Tex. Civ. App.) 29 S. W. 256; Railway v. Warner (Tex. Civ. App.) 31 S. W. 66; Railway v. Olds (Tex. Civ. App.) 112 S. W. 793; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 Sup. Ct. 275, 53 L. Ed. 453. In the last case cited the Supreme Court of the United States copied and approved the following language from Brunswig v. White, herein cited, that—

"When, from the age and undeveloped state of the child, any estimate of value of the services until majority would be matter of opinion, in which no particular or especial knowledge in way of expert testimony could be procured better than the judgment and common sense of the ordinary juror called to the duty of determining such value, then, upon such testimony, the sound discretion of the jury can be relied on to determine the value, without any witness naming a sum."

[3-5] In this case the evidence showed that the children were healthy and sprightly, that they assisted the mother when called upon, and this formed a sufficient basis upon which the jury could base their verdict. The amount was not excessive, as is indicated in several of the cases cited, and it is clear that no damages except those accruing to the mother were considered by the jury. In the Brunswig v. White Case the court quoted with approval the following language of the Illinois Supreme Court in City of Chicago v. Hesing, 83 Ill. 207, 25 Am. Rep. 380:

"When proof is made of the age and relationship of the deceased to next of kin, the jury may estimate the pecuniary damages from the facts proven, in connection with their own knowledge and experiences in relation to mat-

ters of common observation. It is not indispensable there should be proof of actual services of pecuniary value rendered to next of kin, nor that any witness should express an opinion as to the value of services that may have been or might be rendered."

That proposition is the rule in Texas and has never been questioned. The third proposition has been met in what has been said in connection with the second and fifth, and all are overruled.

[6] The facts presented a case for a jury as to contributory negligence, and their finding that there was no contributory negligence upon the part of the driver of the automobile will not be disturbed. The facts showed that the crossing was one that was frequently used, that it was in a small town, that no sufficient signals of approach to the crossing were given, that the motorcar was moving at a very high rate of speed, that the motorman was shut up in a compartment of the car on the side of the railroad opposite from that on which the automobile was approaching, that the car was almost noiseless in its movement over the track, and high weeds on the right of way obstructed the view of those on the boulevard approaching the railroad. As said by this court in Railway v. Walker, 161 S. W. 961, in which a writ of error was refused:

"The jury has found that appellant was guilty of negligence, and that appellee was not guilty of contributory negligence. Whatever may be the rule in the states from which the numerous cases cited by appellant have been selected, it is not the rule in Texas that it is negligence per se for a person not to stop, look, and listen before going upon a railroad crossing. A failure to use such precautions is a matter of fact to be considered by a jury. The overwhelming weight of authority in Texas is to the effect that, in the absence of a statute, the failure of a person approaching a railroad crossing to stop, look, and listen does not render him guilty of contributory negligence as a matter of law."

The fourth proposition is overruled.

[7] The eighth proposition of law is untenable, and is overruled. The measure of damages given by the court to the jury was the reasonable value of the children's services until they arrived at ages of majority, less the cost and expense of their care, support, maintenance, and education, and what might be reasonably expected from them after reaching their majority. The measure of damages given has often been approved. Appellant, however, has sought to inject issues about life expectancies of the children, as to whether either of them would have married, and the day, month, and year that either of them would have married, and other equally impossible and irrelevant matters, which, to have been answered, would have required an expedition into the untracked realm of the future, and the posses-

sion by the jury of the vision of seers and the ken of prophets. To have presented the requested issues would have reduced the trial to a farce and caused the most inextricable uncertainty and confusion. The jury might with the same propriety have been asked as to the height, age, color of hair and eyes, and financial condition of the two dream husbands of the future. The issues sought had no place in a trial of the rights of parties to a lawsuit in a Texas court.

The charge of the court placed the issue of contributory negligence clearly before the jury, and the various and complicated issues on that subject were on the weight of the evidence, would have been of no assistance to the jury, and would have led into an interminable maze of issues, which would have confused the jury as true issues. The ninth, tenth, eleventh, twelfth, and thirteenth propositions are overruled.

[8] It may be true as contended by appellant, that the provisions of Rev. St. 1911, art. 6564, do not apply to a car propelled by a motor; still such car would not be licensed to run over railroad tracks without being equipped with apparatus for giving adequate signals of its approach to public crossings, and was in effect and substance what was alleged in the petition, and the court very properly admitted testimony tending to show the inadequacy of the signals given by the motorcar, and very properly submitted the issue as to whether the motorcar was equipped with a whistle reasonably calculated to give reasonable notice to the public of its approach. The fourteenth, fifteenth, sixteenth, and seventeenth propositions of law are overruled.

[9] The eighteenth proposition is without merit. To have required the allegations in the petition as to how much appellee would have been compelled to expend on each of the dead children, had the accident not happened, and the average amount that would have been earned by them, would have assisted no one engaged in the trial, and would have led the pleader into a field of speculation, doubt, and uncertainty, which is never required in pleading.

The jury found that a proper lookout was kept on the car, and as there was no evidence of discovered peril the court very properly refused to inject that issue, at the request of appellant, into the case. The jury clearly found the negligence of appellant to have consisted in running its car at a reckless rate of speed, that the car was not equipped with proper appurtenances for giving proper signals, and that such signals were not given on approaching the crossing. There was no discovered error in the case raised by the evidence. The nineteenth assignment of error is overruled.

[10, 11] Appellant sought to show by S. H. Hancock, the father of two boys and five girls, who had been piloted, fed, and clothed through

infancy and youth to years of maturity by him, what the probable expense of rearing, maintaining, and educating the two dead children, had they lived, would have been. The court refused to allow any such evidence. There is no intimation that the circumstances surrounding the witness were at all similar to those of appellee, or whether the witness was an economical or extravagant parent, or any other circumstance to show that he was in a position to give the jury any more information than they already had. If he had shown, however, that his children had been fed, clothed, and educated just as the two little girls would have been, had they lived, his evidence was properly rejected, because the circumstances of the case did not demand or permit the use of expert testimony. So it was held, in Brunswig v. White, no particular or especial knowledge in way of expert testimony could be procured better than the judgment and common sense of the ordinary juror, called to the duty of determining such value in cases of this character. Such matters must be left to the sound judgment of the jury, rather than to the varying ideals of expert parents as to how children could or should be reared. The parental efforts in rearing a family do not furnish a fertile field from which to gain expert knowledge as to what amount should be spent on the rearing of children. Through the efforts of appellant to discredit the verdict of the jury, it appeared that they arrived at their verdict in a reasonable, businesslike way. The twentieth, twenty-first, twenty-second, and twenty-third propositions are overruled.

The twenty-fourth proposition is not meritorious and is overruled.

[12] The evidence of Mrs. Reichert tended to show that the motorcar was running at a high rate of speed, not only before it got in proximity to the crossing, but was so moving a very short time before the car reached the crossing. The witness, as well as her husband, swore that the car passed the automobile in which they were riding at a rapid speed about three-quarters of a mile from the Alamo Crossing. They were in a position to measure the speed of the motorcar by the pace at which they were traveling. In going three-quarters of a mile, the motorcar had outstripped the automobile, which was going 20 miles an hour, one-eighth of a mile, or in going 1,320 yards had gained 220 yards on the automobile. Any one is permitted to testify as to the rate at which a vehicle is moving, but these witnesses qualified themselves to testify intelligently by the circumstances surrounding them at the time. The rate of speed might well cause Mrs. Reichert to exclaim to her husband:

"The motor must be behind time; it is running very fast this morning."

Her exclamation was a part of the res gestæ, and was permissible as a part of the testimony. Then twenty-fifth and twenty-sixth propositions are overruled.

[13] It was permissible to allow the witness Griffith to testify that, immediately after the collision, Mr. Watkins asked the witness what hit him and which way was it going. It was a part of the res gestæ, and tended to show that Watkins did not know of the proximity of the car when it hit him. The cases of Railway v. Vallejo, 102 Tex. 70, 113 S. W. 4, 115 S. W. 25, and Blossom Oil & Cotton Co. v. Poteet, 104 Tex. 230, 136 S. W. 432, 35 L. R. A. (N. S.) 449, are cited in support of the proposition that the inquiry made by Watkins of Griffith a few minutes after the collision, at a time when he was suffering from an injury which culminated in his death on the following day, was not admissible, but no such questions arose in either of them; the only thing about either of them similar to the present case being that each of them relate to the killing of children. The rule is established in Texas by numerous decisions that declarations are admissible as part of the res gestæ which are made by a person on receiving an injury, before he is removed from the scene, and which are made in connection with the injury, and when the facts indicate that the utterances are spontaneous, created by or springing out of the transaction, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design. Railway v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Railway v. Hall, 83 Tex. 675, 19 S. W. 121. The utterances by Watkins come fully within the rule stated, which is upheld by all the appellate courts of Texas. The twenty-seventh proposition is overruled.

[14] The twenty-eighth proposition is too abstract, general, and indefinite to require consideration. It is not followed by any statement that throws any light on the proposition. However, if the allegation complained of should have been stricken from the petition, its retention therein could not have injured appellant, because it did not raise any issue that was presented to the jury. No evidence is complained of or set out which was admitted under the allegation assailed by appellant.

The facts in this case are not very dissimilar to those often presented in cases of collision caused by the negligence of railway companies, and most of the points sought to be presented have been decided many times by Texas courts of last resort. The facts make a case of a motorcar operated by a railway running over a public crossing in a town or village at a reckless rate of speed, without giving signals of its approach, and crashing into an automobile passing over the crossing, and killing four out of six of the persons in the automobile, and the jury has not evidenced any passion or prejudice in

assessing damages in the sum of $8,000 for the two little girls.

The judgment is affirmed.

### On Motion for Rehearing.

We desire to eliminate the conclusion that appellee was in the automobile when it was struck. She was not in the automobile at that time.

[15] We conclude, in addition to our former conclusions of fact, that just before deceased drove on the railroad crossing he was placed in great peril by the fact that a team hitched to a wagon was running away, and the automobile had to be swerved from its course to save it from a collision with the wagon and team, and the whole attention of the occupants of the automobile was centered on the runaway team and was diverted from the approaching car. These facts bear materially on the issue of contributory negligence. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139; Trochta v. Railway (Tex. Com. App.) 218 S. W. 1038; Railway v. Patella (Tex. Civ. App.) 222 S. W. 615, at page 619.

The motion for rehearing is overruled.