Gulf, Colorado & Santa Fe Railway Company v. T. C. Gibbs.

Decided July 1, 1903.

**1.—Personal Injury—Physical Examination of Person.**

In an action for personal injury to plaintiff's wife, resulting in a miscarriage and injury to the nervous system, it was not error for the court to refuse to order an examination of the wife's person by physicians appointed for the purpose, where the undisputed evidence showed that she received no external injuries, and there was no testimony indicating that an examination of her person would throw any light upon the character and extent of her injuries, or raising the suspicion that her alleged sufferings were pretended or unreal.

**2.—Same—Evidence Showing Permanent Injury.**

Evidence held sufficient to raise the issue of permanent injury to the wife, resulting from a collision which threw her to the floor of a car.

Appeal from the District Court of Montgomery. Tried below before Hon. L. B. Hightower.

*F. J. & R. C. Duff* and *J. W. Terry,* for appellant.

*Dean, Humphrey & Lewis,* and *Andrews & Ball,* for appellee.

PLEASANT, Associate Justice.—This suit was brought by appellee against the appellant to recover damages for personal injuries to his wife, alleged to have been caused by appellant's negligence. The petition alleges that on August 10, 1901, plaintiff's wife was a passenger upon one of appellant's passenger trains, and that while said train was standing upon appellant's railroad track at a place known as Davidson's Switch, a freight train on appellant's road, which was being operated over a side track at said switch, on account of the negligent construction of said side track and the negligence of the employes of appellant in operating said train, was derailed, and a portion of said train was thrown violently against the car in which plaintiff's wife and children were sitting. That by the force of said collision the car in which plaintiff's wife was riding was violently jolted and jarred, and she was thrown with great force from her seat to the floor of said car and received serious and permanent injuries. The allegations as to the injuries received by plaintiff's wife are as follows:

"Plaintiff further alleges that at the date of and prior to said collision and the infliction of said injuries, his wife, the said James Etta Gibbs, was and had been for a long time prior thereto in the enjoyment of excellent health; that she was usually free from sickness, bodily ailments, spinal trouble or nervous complaints, and was strong, active and vigorous and well able to attend to her household duties, as well as those of wife and mother; that his said wife had theretofore continuously discharged said duties in caring for her household affairs and their children, and said services of his said wife were of great value

to plaintiff; that at the date of said collision and injuries to his wife, she was in a state of pregnancy, and had been for a period of about two months prior thereto, and had every expectation, in due time, of again becoming a mother; that as the result of said collision and of being thereby violently thrown down in defendant's car, his said wife was greatly shocked, frightened and jolted, her spine was permanently weakened and injured, her nervous system severely shocked and permanently impaired, and internal injuries were suffered therefrom, which shortly afterwards brought on or resulted in a miscarriage or abortion; that as a result thereof, his said wife will be predisposed to other and further miscarriages or abortions in the future; that plaintiff's said wife, by reason of the injuries aforesaid caused by defendant's negligence, did at the time of said collision suffer very great mental and physical pain; that she was compelled to endure the pain in mind and body of giving premature birth to a child, which would have otherwise come into the world in due time to bring joy and comfort instead of pain and sorrow; that from said injuries as before recited, she has since the date thereof, and will in the future, continue to suffer physical and mental pain and permanent impairment of health and strength; that the ability of his wife by reason thereof to discharge her household duties and to care for their children had been and will continue to be greatly impaired and diminished, to plaintiff's great damage in the sum of twenty-five thousand dollars."

Defendant answered by general demurrer and general denial, and pleaded specially as follows:

"And further specially answering herein, defendant says that the injuries complained of by plaintiff in his said petition were the result of the carelessness and negligence of himself and of his wife, in this: That plaintiff and his said wife failed and neglected to consult with or employ a physician to properly treat and care for his said wife after they discovered she was injured as claimed in his said petition until after the abortion had become complete; defendant says that had the plaintiff or his said wife taken proper medical treatment and care of herself that said abortion could and would not have happened or taken place; and that the same was the direct result of their failure to take proper care and treatment of the said Mrs. James Etta Gibbs after they had discovered she was injured, as claimed by plaintiff.

"And further specially answering herein, the defendant says that the collision of said train and the negligence complained of in plaintiff's petition were not the proximate or direct cause of plaintiff's wife's injury; that the same was caused by the negligence of plaintiff and his said wife failing to take proper medical treatment and due care of the said plaintiff's wife after having discovered that she was probably injured."

The trial of the cause in the court below by a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $4000, from which judgment the defendant below prosecutes this appeal.

The evidence shows that plaintiff's wife was thrown from her seat in defendant's car in the manner and under the circumstances alleged in the petition. Mrs. Gibbs testified as to the extent and character of her injuries, as follows:

"The freight struck the coach with a great deal of force. It broke the window sash and blinds, and threw me from my seat to the floor. I was very much frightened and shocked, and my back was sprained, and I suffered very much with it from the time. I began to suffer at once from the injuries in my back. These injuries culminated in a miscarriage. I suffered great physical pain from these injuries, chiefly in my back, and my nervous system was all torn up. I have never recovered from these injuries, and still suffer pain therefrom. * * * I have been extremely nervous since said injuries, and have been very weak, and have suffered much with my back. I was in good health before the injury, and did not suffer at all from nervousness or pain in back. I can not stand any exertion now, and prior to the injury I did not suffer on this account at all, but could endure any reasonable exertion without fatigue. I feel tired and inert all the time now. * * * It is not a fact that my health is as good now as it was prior to the accident. I can not feel that I am improving much; I may be, but it is very slight, if at all. I have never felt relieved from the backache that I have experienced since the accident, and have never gotten over the nervous shock. I am some better now than I was immediately after the accident. I know how I feel and how anything affects me, and how I felt and was affected prior to the accident, is the reason why I testify as to my mental condition."

Plaintiff testified that since the accident his wife had been weak and nervous, and suffered nearly all the time with pain in her back; that prior to the accident she had been in excellent health, had never suffered from any nervous affection and was very active in the discharge of her household duties; that her health is now very poor, and he did not think that it had improved any since the accident. Dr. Hadricks, who was Mr. Gibbs' physician, testified that he attended her when she had her miscarriage, but had not examined her since. He had been frequently consulted by plaintiff, and has prescribed for his wife for nervousness and pains in the back. He further testified that all authorities agree that one miscarriage predisposed to another, and that such was his opinion. After her miscarriage and before the trial in the court below, Mrs. Gibbs had conceived and given birth to a child. The child was born about three weeks before the expected time, but its delivery was not accompanied by any unusual features of labor. Dr. Hadricks further testified that he did not know whether the subsequent birth of a child corrects or remedies the predisposition to miscarriage caused by a former abortion. Mrs. Gibbs received no external injuries of any kind by her fall, and there were no objective symptoms of any injuries. She declined the request of the defendant to submit to a personal examination by physicians. She testified that she would not

be willing to submit to such examination except for the purpose of treatment, and then only by her family physician, because such examination would be very unpleasant and disagreeable to her.

The first assignment of error complains of the refusal of the trial court to grant appellant's motion, made at the proper time, to require Mrs. Gibbs to submit to a physical examination by physicians appointed by the court for that purpose. The weight of authority sustains the right of a trial court, when the ends of justice demand it, to compel the injured party in a suit for damages for personal injuries to submit to an examination of his person by physicians appointed by the court, and our Supreme Court seems to sanction the doctrine. International & G. N. Ry. Co. v. Underwood, 64 Texas, 463; Missouri Pac. Ry. Co. v. Johnson, 72 Texas, 95. The Supreme Court of the United States repudiates the doctrine, and holds that the sacred right of the individual to the possession and control of his person, free from all restraint and interference by others, can not be thus violated. Railway Co. v. Botsford, 141 U. S., 250. Conceding that the rule sustained by weight of authority prevails in this State, we do not think the facts in this case call for the application of the rule. The undisputed evidence shows that plaintiff's wife received no external injuries of any kind, and there is no testimony indicating that an examination of her person would have thrown any light whatever upon the character or extent of her injuries. Her symptoms were all subjective, and there is nothing in the evidence to raise the suspicion that she was malingering or that her alleged sufferings were pretended or unreal. Under these facts it can not be held that the trial court abused his discretion in refusing to compel Mrs. Gibbs to submit to an examination of her person by physicians.

The third assignment of error complains of the refusal of the trial court to instruct the jury that the evidence was insufficient to show any permanent injury to plaintiff's wife, and that upon that issue they should find for the defendant. We think the evidence before set out raised the issue of permanent injury, and the court properly refused the requested charge.

The court correctly instructed the jury upon the issue of contributory negligence on plaintiff's part in failing to have his wife treated by a physician as soon as he learned of her injuries, and the verdict of the jury on this issue is sustained by the evidence.

The judgment of the court below will be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.